JOURNAL ENTRY AND OPINION
{¶ 1} Defendants-appellants, Pinnacle 701, LLC, et al. appeal the decision of the lower court. Having reviewed the arguments of the parties and the pertinent law, we hereby affirm the lower court.
 I. {¶ 2} According to the case, Gus Georgalis owned and controlled two limited liability companies which were involved in the construction of a condominium building. Disputes arose between Georgalis and his entities on the one side, and a supplier, Midwest Curtainwalls, Inc., on the other side. In order to help resolve these disputes, the parties entered into an arbitration agreement. This case arises out of the construction of a condominium building in Cleveland, Ohio known as the Pinnacle project. Kostas, a general contractor in the construction business, is an Ohio limited liability corporation doing business in Cleveland. Pinnacle is also an Ohio limited liability corporation doing business in Cleveland. Midwest Curtainwalls, Inc. is an Ohio corporation that engages in the sale, design, engineering, testing, and manufacturing of glass curtainwall systems.
 {¶ 3} On January 2, 2004, Kostas subcontracted with Midwest to provide the glass curtainwall system for the Pinnacle project. After various disputes between the parties, work halted on the Pinnacle project. Kostas then engaged a different organization, Harmon, Inc., to complete the curtainwall system. Thereafter, on February 2, 2005, Midwest filed a demand for arbitration under section 6.2 of the parties' subcontract. Midwest amended its *Page 4 
demand for arbitration on April 26, 2005. On May 20, 2005, Midwest filed a complaint in federal court, naming Gus Georgalis and Harmon, Inc.
 {¶ 4} The parties later agreed to arbitrate the issue. The arbitrator set up a procedure to define the issues that would be tried at the arbitration hearing. The arbitrator required the parties to file prehearing briefs disclosing the issues to be tried, supporting arguments and authorities, and all elements of claims or defenses. The parties submitted their briefs, and the arbitrator presided over the arbitration proceedings from May 15 through May 19, 2006. On August 31, 2006, the arbitrator awarded Midwest $573,511.51, including $115,089.55, jointly and severally against Georgalis, individually, and Kostas Construction Co., Ltd., the general contractor, for attorneys fees based upon the bad faith conduct of Georgalis and Kostas. The trial court confirmed this award. In the trial court and on appeal, Georgalis challenged only that portion of the award which was entered against him personally. Appellants now appeal.
 .II. {¶ 5} Appellants' assignment of error provides the following: "The trial court erred in confirming the arbitration award as the arbitrator exceeded his authority in entering judgment against Gus Georgalis in his capacity under the prompt pay act."
 III. {¶ 6} A common pleas court's review of an arbitration decision is quite narrow. Goodyear Rubber Co. v. Local Union No. 200 (1975),42 Ohio St.2d 516, 520; City of Huber Heights v. Fraternal Order of Police
(1991), 73 Ohio App.3d 68, 596 N.E.2d 571, motion to *Page 5 
certify record overruled (1991), 62 Ohio St.3d 1417. The court may not review the merits of an arbitration award and can set aside an arbitration award only if the party attempting to set aside the award is able to establish that the award is defective in a manner recognized by R.C. Chapter 2711. Hillsboro v. Fraternal Order of Police (1990),52 Ohio St.3d 174, 556 N.E.2d 1186; Warren Edn. Assn. v. Warren City Bd. ofEdn. (1985), 18 Ohio St.3d 170, 480 N.E.2d 456; see, also, Findlay Bd.of Edn. v. Findlay Edn. Assn. (1990), 49 Ohio St.3d 129, 551 N.E.2d 186;State Farm Mut. Ins. Co. v. Blevins (1990), 49 Ohio St.3d 165,551 N.E.2d 955; City of Huber Heights v. Fraternal Order of Police, supra.
 {¶ 7} The limited scope of judicial review of arbitration decisions comes from the fact that arbitration is a creature of contract. Contracting parties who agree to submit disputes to an arbitrator for final decision have chosen to bypass the normal litigation process. If parties cannot rely on the arbitrator's decision (if a court may overrule that decision because it perceives factual or legal error in the decision), the parties have lost the benefit of their bargain. Arbitration, which is intended to avoid litigation, would instead become merely a system of "junior varsity trial courts" offering the losing party de novo review. Motor Wheel Corp. v. Goodyear Tire RubberCo. (1994), 98 Ohio App.3d 45, 647 N.E.2d 844.
 {¶ 8} By the same token, respect for the parties' contract justifies the limited review undertaken by the court of common pleas. An arbitrator draws his power from the parties' contract. For a court to enforce an award that is clearly beyond the arbitrator's authority *Page 6 
denies the parties of the benefit of their bargain just as surely as overturning an award because the court disagrees with the decision on a factual or legal basis. Id.
 {¶ 9} Our review of the common pleas court's judgment is likewise limited. "Appellate review of arbitration proceedings is confined to an evaluation of the order issued by the court of common pleas, pursuant to R.C. Chapter 2711. The substantive merits of the original arbitration award are not reviewable on appeal absent evidence of material mistake or extensive impropriety." Lynch v. Halcomb (1984), 16 Ohio App.3d 223,475 N.E.2d 181, paragraph two of the syllabus.
 {¶ 10} It is with the above standards in mind, that we now review appellants' arguments. Appellants argue that appellees did not properly raise the Ohio Prompt Payment Act. However, at the time appellee Midwest filed its arbitration demand, it did not know that the Ohio Prompt Payment Act claims existed.
 {¶ 11} Under R.C. 4113.61, a contractor must pay a subcontractor on a payment application within 10 days of the contractor receiving funds from the owner. At the time the arbitration demands were filed, Midwest believed that Huntington had refused to fund Midwest's payment applications. During the course of discovery Midwest learned that Kostas, through Georgalis, violated the Prompt Payment Act by submitting payment applications to the bank which certified Midwest's entitlement to be paid, therefore obtaining *Page 7 
funds allocated for Midwest from Huntington, but then refusing to pay Midwest and converting those funds to Georgalis' own use.[1]
 {¶ 12} Midwest described the Prompt Payment Act claims in its prehearing brief in a section entitled "Payment Failures."[2] "From the beginning of the project, Kostas repeatedly failed to make timely payments in violation of the subcontract and Ohio's Prompt Payment Act(R.C. § 4113.61) and in contradiction to sworn certifications submitted to Huntington."[3] Midwest also included its claims for Prompt Payment Act interest and attorneys fees on its damage summary submitted with the brief.[4]
 {¶ 13} On May 15 through May 19, 2006, a hearing was held before Arbitrator Keranen. Midwest stated at this hearing that it was seeking interest and attorneys fees based on both the Ohio Prompt Payment Act and on Georgalis' bad faith. For example, President Donald F. Kelly explained the following as it concerned Midwest's damage calculation and exhibit:
 "Q. Item H is `Interest on late payments, $160,335.'
 A. Yes. That's calculated for all of the payments — I think they were all eight. We have it on a table, a complicated table. The calculations are based on Georgalis' violation of the Prompt Pay Act in Ohio, which, if *Page 8 
breached — if he violates that act with Midwest or anyone, he is subject to interest charges at 18 percent.
 Q. And finally, you have `Legal costs due to bad faith' estimated at $104,000. That's the costs for this arbitration?
 A. Yes."
 {¶ 14} The attorneys who represented Georgalis at the arbitration were aware of, and responded to, the Prompt Payment Act claims.[5] For example, early in the hearings, counsel specifically discussed the Prompt Payment Act with the arbitrator.[6] During the dialogue, Georgalis' attorneys responded to the arbitrator's questions as to the statutory interest rate for violations of the Prompt Payment Act and suggested that the parties brief other Prompt Payment Act issues raised by the arbitrator. In addition, attorneys for Georgalis and Kostas argued Prompt Payment Act issues in the post hearing briefs.[7]
 {¶ 15} Moreover, at the arbitration, Georgalis' counsel stipulated to the evidence which establishes Georgalis' Prompt Payment Act violations. Midwest presented a table that showed the dates and amounts of Midwest's payment applications, the dates and amounts requested for Midwest on Georgalis' payment applications to Huntington, the dates and the amounts Huntington disbursed funds to Georgalis allocated for Midwest, and the dates on *Page 9 
which Georgalis paid this money to Midwest, if he ever did. Georgalis' counsel stipulated to the accuracy of Exhibit 375.[8]
 {¶ 16} In addition to the evidence above, the parties' agreements to arbitrate included all disputes relating to the project. For example, paragraphs two and three of the Agreement to Arbitrate state as follows:
 "2. Midwest agrees to arbitrate in the Arbitration Proceeding its claims against Harmon and Georgalis arising out of the Project, including, but not limited to, the claims raised in the Federal Lawsuit, as if it were bound to do so under the terms of the Subcontract Agreement;
 3. Harmon and Georgalis agree to the arbitration in the Arbitration Proceeding of Midwest's claims against them arising out of the Project, including, but not limited to the claims raised in the Federal Lawsuit, as if they were bound to do so under the terms of the Subcontract Agreement;" (Emphasis added.)
 {¶ 17} Therefore, the plain language of the agreement allows for claims raised in the federal lawsuit, however, is not limited to those claims. Moreover, if the parties had intended to limit the claims that would be subject to arbitration they could easily have done that by simply listing the claims that would be subject to arbitration.
 {¶ 18} Midwest raised Prompt Payment Act claims in its prehearing brief. At the hearing, Midwest stated that it was seeking Prompt Payment Act interest and attorneys fees from Georgalis. The arbitration specifically discussed the Prompt Payment Act with *Page 10 
Georgalis' counsel. Midwest offered substantial evidence of Kostas' Prompt Payment Act violations and Georgalis' personal bad faith in causing those violations. Georgalis attended the entire hearing, testified at length, and had a full and complete opportunity to rebut the evidence presented as to his bad faith conduct. Accordingly, the evidence demonstrates that the Prompt Payment Act, as well as other relevant issues, were properly before the arbitrator and the lower court. Moreover, the explicit language of the Arbitration Agreement specifies that the claims of the parties are not specifically limited to claims raised in the federal lawsuit.
 {¶ 19} In addition to finding the issues to be properly before the arbitrator and the lower court, we also find the arbitration award to be well supported under Ohio law. There is a rational connection between the award and the evidence which the arbitrator heard. A decision is unreasonable where there is no sound reasoning process that would support that decision. AAA Enters. Inc. v. River Place Comm.Redevelopment Corp. (1990), 50 Ohio St.3d 157, 161. Where a "contractor has not complied with the prompt-payment statute, the court must award the subcontractor the statutorily prescribed interest. In addition, the prevailing party is entitled to recover reasonable attorney fees, unless such an award would be inequitable, together with court costs."Masiongale Elec.-Mech, Inc. v. Constr. One, Inc., 102 Ohio St.3d 1, 4,2004-Ohio-1748. The purpose for the act is to provide an incentive for general contractors to promptly pay subcontractors. Intercargo Ins. Co.v. Mun. Pipe Contractors, Inc. 127 Ohio Misc.2d 48, 2003-Ohio-7363. *Page 11 
 {¶ 20} Under Ohio law, an individual who commits fraud or acts in bad faith can be held personally liable for his conduct, even when he acts through a corporate entity and the entity is also liable. Yo-Can, Inc.v. The Yogurt Exchange Inc., 149 Ohio App.3d 513, 526-527,2002-Ohio-5194. Recovering against the individual based actor does not require piercing the corporate veil; a party is liable for his own wrongful conduct.
 {¶ 21} The evidence in the case at bar demonstrates that the claims against Georgalis were subject to arbitration under the parties' agreement. Evidence of Georgalis' bad faith was presented at the arbitration hearing. The record and the evidence demonstrate that the Prompt Payment Act was specifically addressed before, during, and after the hearing. Midwest specifically stated that it was seeking Prompt Pay interest and attorneys fees from Georgalis at the hearing. Georgalis was represented by counsel, attended the hearings, testified at length, and was not precluded from admitting any evidence. There is a rational basis for awarding attorneys fees under the Prompt Payment Act to an individual who commits fraud such that his company violates the act. Georgalis did not cite any rule of procedure which was violated by the arbitrator.
 {¶ 22} Upon review, we find that the trial court acted properly in confirming the arbitrator's award. Furthermore, we find that the arbitrator did not exceed his authority in entering judgment against Gus Georgalis in his individual capacity under the Prompt Payment Act. The conclusions of the arbitrator are grounded in the evidence and the terms of the agreement and are rationally supported. Hence, the arbitrator's award is proper, and there *Page 12 
is no basis to vacate the arbitration award. For the foregoing reasons, we hold that the common pleas court acted properly.
 {¶ 23} Accordingly, appellants' sole assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellants costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MELODY J. STEWART, J., and FRANK D. CELEBREZZE, JR., J., CONCUR
[1] Tr. 13-26, 311, 579-582.
[2] Tab A, appendix to Midwest's reply in support of motion to confirm.
[3] Prehearing brief, p. 4, emphasis added.
[4] Arbitration Ex. 376, Tab C, appendix to Midwest's reply in support of motion to confirm.
[5] The attorneys representing Georgalis in this appeal did not represent him in the arbitration.
[6] Tr. 276-279.
[7] See respondents' closing brief, pp. 11-14, Tab G, appendix to Midwest's reply in support of motion to confirm and respondents' reply brief, pp. 10-13 and 16-19, Tab H, appendix to Midwest's reply in support of motion to confirm.
[8] Ex. 375, Tr. 579-582. Ex. 375, proved the following: 1. On Payment Application No. 3, Georgalis and Kostas held $16,537 of Midwest's money for more than two months after Huntington disbursed the money; 2. On Payment Application No. 4, Georgalis and Kostas held $108,513 of Midwest's money for 42 days after Huntington disbursed the money; 3. On Midwest's September and December (2004) Payment Applications, Georgalis and Kostas have been holding and continue to hold $204,152 of Midwest's money disbursed by Huntington on December 14, 2004, more than three years ago. *Page 1