TX OPINION
{¶ 1} Plaintiff-appellant/cross-appellee, Jon Hogan, appeals the decision of the Warren County Common Pleas Court, Domestic Relations Division, to uphold an arbitration decision regarding spousal and child support obligations, as well as the magistrate's decision denying an interest award and dividing a tax obligation. Defendant-appellee/cross-appellant, Nina Hogan, appeals the decision of the same court to divide the tax obligation and to not *Page 2 
award her attorney fees. We affirm the decision of the domestic relations court.
 {¶ 2} Jon and Nina Hogan were married in 1988 and had one child born issue of the marriage. In 1998, Nina filed for divorce in Hamilton County, Ohio but later withdrew the complaint when the two agreed to attempt a reconciliation. A year later, the couple (each represented by counsel) entered into two agreements, "Partial Marital Settlement and Separation Agreement" and a "Memorandum of Agreement" (hereinafter referred to collectively as the "Agreement"), in which they agreed to reconciliation terms.
 {¶ 3} Mainly, Jon agreed to pay Nina child support of $1,000 and spousal support of $3,000 per month which were designated "interim" payments that would continue until Jon and Nina no longer sought to reconcile. The Agreement specified that if the couple was not able to agree on an appropriate amount of support to be paid after the reconciliation attempt failed, that amount would be decided by a named arbitrator.
 {¶ 4} By executing the Agreement, the parties also divided assets, including an investment account held by Jon's mortgage business, Hogan Financial Services. In total, the account was valued at $2,968,251 as of October 31, 1999. The Agreement specified that Nina would take a disbursement of $1,686,491 and the division was to be performed equitably so that each party would have investments with similar tax bases. Though both parties were well represented during the negotiation and received advice specific to the division, the investment distribution resulted in an unanticipated capital gains tax in excess of $95,000.
 {¶ 5} Based on the Agreement, the parties filed a joint tax return for 1999 and the capital gains tax resulting from Nina's receipt of her share was charged against Jon and Nina's joint tax credit of over $167,338. The credit existed because Jon made quarterly tax installments totaling $143,458, and Nina contributed $23,800 by installment because she *Page 3 
believed that the spousal support she received that year would be taxed. However, because they filed jointly, the money Nina received was not considered spousal support and was not taxed. Had it not been for the capital gains tax, the expected refund would have been $99,560 and the Agreement specified that it would be divided in proportion to the percentage each party paid into the tax fund (Jon 86 percent and Nina 14 percent). Instead, and due to the capital gains tax, Jon retained the diminished $3,721 refund.
 {¶ 6} The parties also filed a shared parenting plan in which they agreed on issues specific to their child. Nina and Jon lived under the terms of the Agreement and shared parenting plan with the major contention being the capital gains tax which they endeavored to resolve over the course of the following years.
 {¶ 7} In 2007, however, Jon filed for divorce in Warren County. Nina began the process of having the case heard by the arbitrator named in the Agreement. While Jon opposed having the issues determined by an arbitrator, the magistrate ordered that the arbitrator would decide spousal and child support amounts according to the Agreement, but reserved the tax and attorney fee issues to the domestic court for final disposition.
 {¶ 8} The child and spousal support matters were heard over three days before the named arbitrator who interpreted the Agreement to permit him to award retroactive child and spousal support. The arbitrator ruled that Jon's combined payment of $4,000 per month was below what he should have been paying and that during the reconciliation period, the payments should have totaled $475,000 in spousal support and $192,000 in child support. The arbitrator then directed Jon to increase his ongoing child support obligation to $2,500 per month. Though the award gave credit for spousal and child support already paid, the award left Jon owing Nina a considerable amount.
 {¶ 9} After the arbitrator considered the support issues, the magistrate heard the *Page 4 
capital gains tax and attorney fee issues. The magistrate concluded that the parties were mutually mistaken regarding the tax consequence and replaced the Agreement's tax clause with an equitable division of the tax burden so that Nina owed Jon $63,028. The magistrate also declined to award Jon any interest on the tax reimbursement or to grant Nina's request for attorney fees or litigation expenses.
 {¶ 10} Both parties filed objections with the trial court, who overruled each in turn, adopting the magistrate's decision in whole. It is from this decision that the parties now appeal, raising three assignments of error and two cross-assignments.
 {¶ 11} Assignment of Error No. 1:
 {¶ 12} "THE TRIAL COURT ERRED BY FAILING TO VACATE THE ARBITRATION AWARD."
 {¶ 13} In his first assignment of error, Jon argues that the court erred by not vacating the award because the arbitrator exceeded his power since the Agreement did not authorize a retroactive support award. This argument lacks merit.
 {¶ 14} Ohio legislators have continually expressed a strong policy favoring arbitration of disputes. R.C. 2711.01(A) provides that "* * * any agreement in writing between two or more persons to submit to arbitration any controversy existing between them at the time of the agreement * * * shall be valid, irrevocable, and enforceable, except upon grounds that exist at law or in equity for the revocation of any contract." Once a matter is arbitrated, "the only way to give effect to the purposes of the arbitration system of conflict resolution is to give lasting effect to the decisions rendered by an arbitrator whenever that is possible." City of Hillsboro v. Fraternal Order of Police, Ohio LaborCouncil, Inc. (1990), 52 Ohio St.3d 174, 176.
 {¶ 15} The purpose of giving lasting effect to an arbitration award is to honor the *Page 5 
parties' decision to circumvent the traditional court-based litigation process. "If parties cannot rely on the arbitrator's decision (if a court may overrule that decision because it perceives factual or legal error in the decision), the parties have lost the benefit of their bargain. Arbitration, which is intended to avoid litigation, would instead become merely a system of `junior varsity trial courts' offering the losing party de novo review." Midwest Curtainwalls, Inc. v. Pinnacle701, LLC, Cuyahoga App. No. 90591, 2008-Ohio-5134 ¶ 7, citing MotorWheel Corp. v. Goodyear Tire Rubber Co. (1994), 98 Ohio App.3d 45. Parties who agree to resolve their disputes via binding arbitration agree to accept the result, even if the arbitrator's decision is based on factual inaccuracies or the arbitrator's incorrect legal analysis.Buchholz v. West Chester Dental Group, Butler App. No. CA2007-11-292,2008-Ohio-5299, ¶ 34.
 {¶ 16} Because arbitration is championed as such, courts have limited authority to review an arbitration award. In the common pleas court, the review is limited to determining whether the party challenging the award has established a means for reversal according to statute. Id. at ¶ 15. The instances set forth under R.C. 2711.10 include if the award was procured by corruption, fraud, or undue means, partiality on the part of the arbitrator, the arbitrator's misconduct in refusing to hear evidence, or if the "arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."
 {¶ 17} Limited further, an appellate court's review is confined to the order issued by the common pleas court to confirm, enforce, modify or vacate the award. Fraternal Order of Police v. City of Athens, Athens App. No. 01CA18, 2001-Ohio-2621, *3. It is well settled that an arbitrator's findings of fact are not subject to judicial review.City of Fairfield v. Am. Fed. of State, Cty., Mun. Emps., Ohio Council8, Butler App. No. CA2007-11-267, 2008-Ohio-3891. In conjunction with a strong presumption of validity towards the original arbitration *Page 6 
proceedings, "an appellate court will review the common pleas court's decision to confirm, modify, vacate or enforce the arbitration award based on abuse of discretion." Buchholz at ¶ 21-22. More than mere error of judgment, an abuse of discretion requires that the court's attitude was unreasonable, arbitrary, or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 18} Specific to arbitration based on a contractual dispute, the Ohio Supreme Court has held that arbitrators do not exceed their authority if the award draws its essence from the contract and if the arbitrator interprets the contract rather than adding, subtracting, or altering its language. City of Hillsboro v. Fraternal Order of Police,Ohio Labor Council, Inc. (1990), 52 Ohio St.3d 174. An award fails to draw its essence from the contract if there is "an absence of a `rational nexus between the agreement and the award,' or when the award is `arbitrary, capricious, or unlawful.'" City of Akron v. Civ. Serv.Personnel Assn. Inc., Summit App. No. 24137, 2008-Ohio-4331, ¶ 12, citing Gingrich v. City of Wooster (Jan. 10, 2001), Wayne App. No. 00CA0032, *5. "A judge reviewing an arbitrator's award may completely disagree with the arbitrator's interpretation of the contract. However, the degree of judicial restraint necessary for a reviewing court to exercise in reviewing an arbitrator's award may, nevertheless, require the judge to deny a motion to vacate the arbitrator's award." City ofHillsboro at fn. 5.
 {¶ 19} Jon argues that the lower court erred by not vacating the arbitrator's award based on three arguments. First, the Agreement did not permit a retroactive award. Second, that Ohio's statutes and civil rules do not permit an order for retroactive support, and lastly that fundamental due process prohibits retroactive support awards. Intertwined with each of these arguments, Jon asserts that the arbitrator exceeded his power because his decision disparages the Agreement, as well as Ohio's case law, statutes, civil rules, and constitutional *Page 7 
due process provisions. However, because Jon and Nina contracted to have the support issue heard before the arbitrator, Jon agreed to accept the award regardless of the arbitrator's interpretation or legal analysis of the Agreement.
 {¶ 20} According to the Agreement, Jon and Nina agreed to the interim support and then further agreed that should the reconciliation fail and they were not able to mutually agree on the amount of support, "then and in that event such determination shall be made by binding arbitration before [the named arbitrator] whose decision shall be final, binding and conclusive upon them."
 {¶ 21} After hearing the parties and taking evidence over three days, the arbitrator released his decision which took into consideration Jon's retroactive award argument. However, the arbitrator found that "the parties contractually agreed to grant authority to an arbitrator to determine the amounts of child support and spousal support due from [Jon] to [Nina] on a final and determinative basis from the time of the execution of the [Agreement] until present. I do not view this determination as being `retroactive' child support and spousal support as contended by [Jon]. Instead, these amounts are the contractual amounts due from [Jon] to [Nina] for the time period over and above the interim amounts that were agreed upon."
 {¶ 22} While Jon asserts that retroactive support awards are impermissive and argues that the arbitrator's award was legally unsound, this court is not permitted to review the factual or legal conclusions the arbitrator made. Instead, we are bound to review only the lower court's order and determine whether the court's decision to uphold the arbitration award was an abuse of discretion.
 {¶ 23} In its decision overruling the objections to the magistrate's decision to adopt the arbitration award, the court rejected Jon's argument that the arbitrator exceeded his authority *Page 8 
and instead agreed with the magistrate that "the parties left the issues of child support and spousal support open." The court therefore determined that Jon was unable to establish that the arbitrator exceeded his authority according to R.C. 2711.10. We find no error in this conclusion.
 {¶ 24} By agreeing to have the support issues determined by binding arbitration, Jon and Nina gave the arbitrator the power and authority to interpret the contract and must now live with the results. Instead of adding to or subtracting from the contract's terms and language, the arbitrator merely interpreted the contract, well within the authority granted by Nina and Jon. The award drew its essence from the contract because there was a rational nexus between the agreement to have the arbitrator determine support amounts and the arbitrator's decision to award the spousal and child support amounts. The lower court's decision to confirm the arbitrator's award was therefore not unreasonable, arbitrary, or unconscionable. Because the court did not abuse its discretion in upholding the award, Jon's first assignment of error is overruled.
 {¶ 25} For ease of discussion, we will discuss Jon's second assignment of error and Nina's first cross-assignment of error together.[1]
 {¶ 26} Assignment of Error No. 2:
 {¶ 27} "THE TRIAL COURT ERRED BY FAILING TO REQUIRE COMPLETE REIMBURSEMENT FOR THE TAXES ASSOCIATED WITH THE ASSET TRANSFER."
 {¶ 28} Cross-Assignment of Error No. 1:
 {¶ 29} "THE TRIAL COURT ERRED IN ORDERING NINA TO PAY $63,029 [sic] TO JON TO `ADJUST' THE PARTIES 1999 INCOME TAX OBLIGATIONS."
 {¶ 30} In these two assignments of error, the parties argue that the trial court erred by *Page 9 
adopting the magistrate's equitable division of the tax burden associated with the unanticipated capital gains tax which resulted from the 1999 division of assets. These arguments lack merit.
 {¶ 31} Reformation of a contract, an equitable remedy, is proper when a mutual mistake of the original parties existed at the time of formation. Motorists Mut. Ins. Co. v. Columbus Fin., Inc.,168 Ohio App.3d 691, 2006-Ohio-5090. "A mutual mistake of fact is present when a mistake by both parties as to a basic assumption on which the contract was made has a material effect on the agreed exchange of performances. The rule of mutual mistake is applicable in those situations in which the parties are mistaken as to a vital existing fact at the time of contracting." Id. at ¶ 10.
 {¶ 32} We note initially that should a party hope to reform a contract based on mutual mistake of the parties, it must affirmatively plead the defense and then demonstrate that the mutual mistake existed. Fox Lamberth Ents. Inc. v. Craftsmen Home Improvement, Inc., Montgomery App. No. 21060, 2006-Ohio-1427. However, "when issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." Jones v. Alvarez, Butler App. No. CA2006-10-257,2008-Ohio-1994, ¶ 23, citing Civ. R. 15(B); see, also, Grice v. RyanHomes, Inc. (Feb. 5, 1987), Montgomery App. No. CA 10110 (affirming decision of trial court to sua sponte rescind contract due to mutual mistake where the issue had not been affirmatively pled but had been fully litigated according to Civ. R. 15(B)).
 {¶ 33} In Jones, the appellant argued that the trial court abused its discretion by sua sponte recognizing a mutual mistake and then reforming the deed in question. The appellant asserted that she was not offered the chance to present testimony or evidence regarding the existence of a mutual mistake or how such a holding would impact her rights in the case. *Page 10 
This court agreed with appellant's arguments and reversed the decision of the trial court. However, the case at bar offers a different posture than Jones.
 {¶ 34} First, neither Jon nor Nina assert that the trial court erred by adopting the magistrate's sua sponte reformation of the Agreement. Instead, the parties both disagree with the way that the magistrate equitably divided the tax liability between the parties. Specifically, Jon argues on appeal that the trial court should not have adopted the magistrate's award because Nina would end up paying only a portion of the tax liability instead of the full amount. Nina also disagrees with the magistrate's division because she argues that the tax payments made by Jon were from marital property so that she should have been given a 50 percent credit. At no time, however, did the parties assert that the magistrate erred by sua sponte recognizing a mutual mistake.
 {¶ 35} Secondly, unlike Jones, Jon and Nina were fully aware that the magistrate was considering the mutual mistake issue and both parties had ample opportunity to be heard on the issue. During the hearings on the tax burden, the magistrate held open discussions with the parties, their witnesses, and representation in order to comprehend and analyze the tax issue.
 {¶ 36} The magistrate heard testimony that the Agreement was written so that the distribution of assets to Nina would be a non-taxable event, and that the resulting tax was a "shock" to the parties. After hearing hours of testimony regarding this misperception, the magistrate stated, "I . . . frankly, I think that I could resolve this if I could meet with the accountants and . . .I mean, or just mediate with everybody in this room and people answering questions . . . it's clear to me that there is a mistake. It is not clear to me that Jon Hogan would have entered into this Agreement had he known the problem in [the tax section]. Who would enter into such an agreement if they knew that . . . who would write it so obscurely against *Page 11 
themselves and then agree to pay the taxes on the problem?" At that point, the discussion continued with both parties offering their suggested division of the tax burden. However, at no time did either party dispute that a mutual mistake had occurred or that the Agreement should not be reformed. In the magistrate's decision, she begins her analysis of the tax issue by stating that "the Court is now asked to determine how the 1999 taxes should be allocated, given the mutual mistake of the parties and the taxation of [Nina's] property distribution." She goes on to decide that "it is clear that the Court must seek to do equity since the parties did not contemplate the manner in which the taxes were computed. The Magistrate has reformulated the tax computation in the following respects." The parties' objections to the magistrate's decision each focus on the way in which the magistrate chose to divide the tax burden, not that she had sua sponte rescinded the tax portion of the Agreement and then equitably divided the burden.
 {¶ 37} While neither party affirmatively pled mutual mistake, it is nonetheless apparent from the proceedings that the tax issue was tried with both parties' consent according to Civ. R. 15(B) so that the magistrate's sua sponte recognition of mutual mistake and Agreement term was not in error. Having found such, we turn our analysis to the division itself.
 {¶ 38} When presented with a divorce matter, a reviewing court will apply an abuse of discretion standard so that the trial court's decision will only be reversed when it is unreasonable, arbitrary, or unconscionable. Smith v. Smith, Butler App. No. CA2005-04-091,2006-Ohio-2136, citing Blakemore v. Blakemore, 5 Ohio St.3d at 219. Upon review, an appellate court may not substitute its judgment for that of the trial court. In re Jane Doe 1 (1990), 57 Ohio St.3d 135.
 {¶ 39} The magistrate, after explaining that an equitable division was necessary due to *Page 12 
the mutual mistake, stated that she based the distribution on what Jon and Nina's tax obligations would have been if they had filed separately with Jon's being $39,158 and Nina's $124,459 (capital gains tax of $95,839 plus tax on the spousal support she received that year that would have been taxed if Nina had filed separately). The magistrate then credited Nina with the payments she made to the Hogan's tax fund ($23,880) and then accounted for the fact that a portion of the overall credit came from marital funds by giving her an additional credit of $37,550. This left Nina owing Jon $63,028.
 {¶ 40} The court heard the parties' objections to the magistrate's decision and overruled them, finding that the tax had been incurred unexpectedly and the parties had to share in the amounts incurred as a result. We cannot say that the trial court's decision to adopt the magistrate's equitable division was unreasonable, arbitrary, or unconscionable. Both Nina and Jon's assignments of error are therefore overruled.
 {¶ 41} Assignment of Error No. 3:
 {¶ 42} "THE TRIAL COURT ERRED BY FAILING TO REQUIRE THE PAYMENT OF INTEREST ON THE MONEY TO BE REIMBURSED TO JON."
 {¶ 43} In his third assignment of error, Jon asserts that the trial court erred by not requiring Nina to pay him interest on the $63,028 tax reimbursement. This argument lacks merit.
 {¶ 44} According to R.C. 1343.03(A), a victorious litigant is entitled to receive interest once money he or she is entitled to receive becomes due and payable. However, a trial court has broad discretion in determining the division of property in divorce proceedings. Cherry v.Cherry (1981), 66 Ohio St.2d 348. As in the previous assignment of error, a reviewing court will analyze the decision of the trial court in divorce proceedings under an abuse of discretion standard so that the decision will not be disturbed absent a showing that the trial court's *Page 13 
decision was unreasonable, arbitrary, or unconscionable. Smith v.Smith, Butler App. No.
CA2005-04-091, 2006-Ohio-2136, citing Blakemore v. Blakemore,5 Ohio St.3d at 219.
 {¶ 45} After the magistrate calculated the amount Nina owed Jon for the tax reimbursement, she declined to award interest because the tax matter had been disputed even before the onset of the divorce proceedings and her decision was the first judicially-awarded determination. The trial court, in adopting the magistrate's decision, refused to award interest on the tax reimbursement and instead focused on the equitable division of the disbursement tax so that each party would incur a portion of the burden. We find no error in this conclusion.
 {¶ 46} The decision to not require Nina to pay interest on a debt that was not adjudicated until the court adopted the magistrate's decision was not unreasonable, arbitrary, or unconscionable. Having found no abuse of discretion, Jon's third assignment of error is overruled.
 {¶ 47} Cross-Assignment of Error No. 2:
 {¶ 48} "THE TRIAL COURT ERRED BY DENYING AN EQUITABLE AWARD TO NINA FOR ALL OR PART OF HER REASONABLE ATTORNEY'S FEES AND LITIGATION EXPENSES."
 {¶ 49} In her second cross-assignment of error, Nina argues that the trial court erred by not awarding her attorney fees and litigation expenses. This argument lacks merit.
 {¶ 50} In conjunction with the abuse of discretion standard of review mentioned above, an award of attorney and litigation fees is governed by R.C. 3105.73(A) which states: "In an action for divorce, dissolution, legal separation, or annulment of marriage or an appeal of that action, a court may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable. In determining whether an award is *Page 14 
equitable, the court may consider the parties' marital assets and income, any award of temporary spousal support, the conduct of the parties, and any other relevant factors the court deems appropriate."
 {¶ 51} Nina requested an award of attorney fees of $83,481 (through March 22, 2007) and litigation expenses totaling $15,748. The magistrate declined to reimburse Nina these fees, finding instead that both parties had ample assets and had made choices regarding the litigation process that resulted in the fees and expenses. The trial court, by overruling Nina's objections to the magistrate's decision, found that the magistrate had considered all relevant statutory factors and that an award of fees and expenses was not equitable. We find no error in this conclusion.
 {¶ 52} Regarding the parties' marital assets and income, the magistrate found that both Nina and Jon received substantial assets when the parties divided the investment account in that each party received over $1.6 million in assets. The magistrate also considered the award of temporary spousal support, and concluded that due to the arbitrator's award, Nina received substantial sums for spousal and child support in addition to the already-disbursed $1.6 million.
 {¶ 53} Regarding the parties' conduct and any other relevant factors the court deemed appropriate, the magistrate concluded that both parties made decisions on how the case would proceed and should individually incur the expenses related to those decisions. While Nina asserts that Jon's conduct during the discovery process was less than forthright, the magistrate found that she could not "conclude from the evidence that [Jon] alone is responsible for the length and complexity of the litigation." Granting the trial court its due deference, its conclusion that a balancing of the statutory factors did not weigh in favor of ordering attorney fees or litigation expenses, was not unreasonable, arbitrary, or *Page 15 
unconscionable. Nina's second cross-assignment of error is overruled.
 {¶ 54} Judgment affirmed.
WALSH, P.J., and POWELL, J., concur.
[1] The arbitrator did not hear the tax, interest, or attorney fee issues that follow in the parties' remaining assignments of error. *Page 1