[Cite as *Ohio Patrolmen's Benevolent Assn. v. Trenton*, 2013-Ohio-3311.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

|  |  |  |
|---|---|---|
| OHIO PATROLMEN'S BENEVOLENT ASSOCIATION, | : | |
| | : | CASE NO.   CA2012-11-238 |
| Plaintiff-Appellee, | : | |
| | : | O P I N I O N |
| | | 7/29/2013 |
| - vs - | : | |
| | : | |
| CITY OF TRENTON, | : | |
| Defendant-Appellant. | : | |
| | : | |

APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. 2012 CV 03 0937

Mark J. Volcheck, 92 Northwoods Blvd., Suite B-2, Columbus, Ohio 43235, for plaintiff-appellee

Marc A. Fishel, Stacy V. Pollock, 400 South Fifth Street, Suite 200, Columbus, Ohio 43215, for defendant-appellant

**HENDRICKSON, P.J.**

{¶ 1} Defendant-appellant, the city of Trenton, appeals a decision of the Butler County Common Pleas Court overturning an arbitrator's award and entering an alternative award in favor of plaintiff-appellee, the Ohio Patrolmen's Benevolent Association (the

"Association").[1]

**{¶ 2}** In July 2011, Sergeant Michael Matala was terminated from his employment with the Trenton Police Department (the "Police Department") stemming from six alleged violations of the Police Department's Code of Conduct. The events leading to Matala's termination began on May 16, 2010, when Matala issued a traffic citation to Melissa Green for running a red light.[2] Matala later learned that the traffic citation had been "voided" by Lieutenant Michael Gillen. Matala sent an email to Gillen complaining about Gillen's actions using, according to the arbitrator, a "clearly sarcastic" tone. Matala further complained about the incident to Police Chief Timothy Traud.

**{¶ 3}** Matala and Traud then met with the Trenton safety director and City Manager John Jones. Jones stated that he believed this situation was an internal matter and that Traud should schedule a meeting between Jones, Traud, Gillen, and Matala so that the situation could be resolved. According to Jones and Traud, Matala was instructed to take no further action until that meeting took place.

**{¶ 4}** Nevertheless, Matala went to the home of Melissa Green to reissue the traffic citation and, at this time, spoke with Green's husband, Matthew Green. Matala informed Matthew Green that Gillen's conduct in voiding the ticket was unlawful and that Gillen may face criminal charges. Matala then reissued the citation to Melissa Green, noting in his supplemental report, "Lieutenant Gillen improperly voided the traffic citation to show Melissa's husband 'a little love' due to the fact that he's an Oxford Fireman." Ultimately, Green was convicted on the citation after a bench trial.

---

1. The Association is a labor organization that is the exclusive bargaining representative for full-time police sergeants in the city of Trenton.

2. The following facts are taken from the arbitrator's "Opinion and Award" as well as the trial court's decision. No transcript of the arbitration hearing was provided with the record but the parties do not dispute the facts described above.

{¶ 5} Around this same time period, Matala began an investigation into Gillen's possession of a vehicle that had previously been located in the city's impound lot. Matala used the Ohio Law Enforcement Gateway (OHLEG), a database exclusively available to law enforcement personnel and strictly restricted to legitimate law enforcement use, to investigate whether Gillen took possession of the impounded vehicle. Matala's investigation was not authorized by Traud or part of Matala's regular assignments. Matala told other police officers in the Police Department about his investigation.

{¶ 6} Based upon Gillen's conduct involving the traffic citation and the impounded vehicle, Matala met with a Butler County prosecutor. During the meeting, Matala was on duty but notified dispatch as to where he was going and remained in radio contact during the entire time. While Matala was talking to the prosecutor, only one other officer was on patrol in Trenton. However, no calls for service were made to dispatch during the time the meeting took place. It is undisputed that this meeting was generated on Matala's own volition without the permission or knowledge of Gillen or Traud.

{¶ 7} As a result of Matala's conduct, Matala was charged with seven violations of the Police Department's Code of Conduct. After a hearing before Jones, five of the seven charges were upheld. The five charges arose out of (1) Matala's conversation with Matthew Green and reissuance of the traffic citation in contravention of Jones' order; (2) the sarcastic and critical reference to Gillen in the narrative regarding the traffic citation; (3) Matala's being absent from his shift without leave to consult with the prosecutor; (4) Matala's conversation with other police officers about Gillen's ownership of the impounded vehicle; and (5) Matala's misuse of the OHLEG for nonlaw enforcement purposes. As a result of Jones's conclusions, Matala was terminated from his employment with the Police Department on July 20, 2011.

{¶ 8} Matala filed a grievance concerning his termination pursuant to a "grievance procedure" outlined in the parties' Collective Bargaining Agreement. On October 28, 2011,

the parties participated in a labor arbitration hearing before an arbitrator. The arbitration hearing centered on the following issue: "Did the employer's termination of Michael Matala violate the just cause provision of the collective bargaining agreement or otherwise violate the collective bargaining agreement? If so, what shall the remedy be?"[3]

{¶ 9} In the arbitrator's December 28, 2011 "Opinion and Award," she found that Matala's conduct of reissuing the traffic citation to Melissa Green was "insubordinate and warranted disciplinary action" and that his conversation with Matthew Green warranted "some significant disciplinary action." On the remaining charges, the arbitrator did not find Matala's conduct to warrant discipline. After further stating that Matala's conduct, as well as the conduct of Gillen and Traud, created such distrust among the three commanding officers of a small police department, the arbitrator concluded as follows:

> The grievance is sustained in part and denied in part. [Matala's] discipline shall be reduced to a thirty day unpaid suspension but he shall not be reinstated to employment. [Matala] is awarded back pay from August 20, 2011 to the date of this Award together with benefits and any out of pocket loss as a result of the termination of benefits from the date of his termination to the date of this Award. The termination shall be removed from [Matala's] personnel file and [Matala] will be considered to have resigned from employment effective on the date of this Award.

{¶ 10} On March 8, 2012, the Association appealed the arbitrator's decision to the Butler County Court of Common Pleas by filing a Motion and Application to Vacate and Modify the Arbitration Award. Trenton responded with a Motion and Application to Confirm the Arbitration Award. On November 2, 2012, the common pleas court issued a decision in favor of the Association. Specifically, the common pleas court determined that the arbitrator exceeded her powers by requiring Matala to involuntarily resign. The common pleas court then vacated that portion of the Arbitrator's Award, reaffirmed the remainder of the

---

3. The Arbitrator phrased the issue as follows: "Did the employer terminate the grievance employee for just cause, and if not, what is the appropriate remedy?"

Arbitrator's Award, and provided that Matala shall be reinstated.

{¶ 11} From the common pleas court's decision, the city appeals, raising two assignments of error:

{¶ 12} Assignment of Error No. 1:

{¶ 13} THE TRIAL COURT FAILED AS A MATTER OF LAW TO DEFER TO THE ARBITRATOR'S AWARD.

{¶ 14} Assignment of Error No. 2:

{¶ 15} [THE] TRIAL COURT ERRED IN OVERTURNING THE ARBITRATOR'S AWARD BECAUSE THE ARBITRATOR ACTED WITHIN THE AUTHORITY GRANTED TO HER BY THE PARTIES.

{¶ 16} Because these assigned errors turn on the same issues of fact and law, they will be considered together. In both assignments of error, the city of Trenton asserts that the arbitrator's award was rational and complied with the terms of the Collective Bargaining Agreement and, therefore, the common pleas court erred in not deferring to the arbitrator's award.

{¶ 17} Arbitration is a favored method of dispute resolution due to its relatively speedy and inexpensive nature as well as its ability to unburden crowded court dockets. *Buchholz v. W. Chester Dental Group*, 12th Dist. No. CA2007-11-292, 2008-Ohio-5299, ¶ 14, citing *Northland Ins. Co. v. Palm Harbor Homes, Inc.,* 12th Dist. No. CA2006-07-021, 2007-Ohio-1655, ¶ 8; *Findlay City School Dist. Bd. of Edn. v. Findlay Edn. Assn.*, 49 Ohio St.3d 129, 131 (1990). "As a result, a strong presumption favors upholding arbitration awards." *Id.*, citing *Cincinnati v. Queen City Lodge No. 69, Fraternal Order of Police,* 164 Ohio App.3d 408, 2005-Ohio-6225, ¶ 14 (1st Dist.). "The purpose of giving lasting effect to an arbitration award is to honor the parties' decision to circumvent the traditional court-based litigation process." *Hogan v. Hogan*, 12th Dist. No. CA2007-12-137, 2008-Ohio-6571, ¶ 15. "'If

parties cannot rely on the arbitrator's decision (if a court may overrule that decision because it perceived factual or legal error in the decision), the parties have lost the benefit of their bargain. Arbitration, which is intended to avoid litigation, would instead become merely a system of 'junior varsity trial courts' offering the losing party de novo review.'" *Id.*, citing *Midwest Curtainwalls, Inc. v. Pinnacle 701, LLC,* 8th Dist. No. 90591, 2008-Ohio-5134 ¶ 7. "Parties who agree to resolve their disputes via binding arbitration agree to accept the result, even if the arbitrator's decision is based on factual inaccuracies or the arbitrator's incorrect legal analysis." *Id.*, citing *Buchholz* at ¶ 34.

{¶ 18} Because arbitration is championed, "the courts have limited authority to review an arbitration award." *Buchholz* at ¶ 15. "In the common pleas court, 'the review is limited to determining whether the party challenging the award has established a ground set forth in R.C. 2711.09 through 2711.14.'" *Id.*, quoting *Citigroup Global Markets, Inc. v. Masek,* 11th Dist. No.2006-T-0052, 2007-Ohio-2301, ¶ 25. Therefore, R.C. 2711.09 through 2711.14 provides the only procedures for post award attack of an arbitration decision in a common pleas court. *Id.*

{¶ 19} Pertinent to the case at hand, R.C. 2711.10 provides that a common pleas court can vacate a binding arbitration award where the arbitrators "exceeded their powers, or so imperfectly executed them, that a mutual, final and definite award upon the subject matter submitted was not made." R.C. 2711.10(D). R.C. 2711.11 additionally provides that a court of common pleas shall "make an order modifying or correcting" an arbitration award if "the arbitrators have awarded upon a matter not submitted to them unless it is a matter not affecting the merits of the decision upon the matters submitted." R.C. 2711.11(B).

{¶ 20} "An appellate court's review is confined to the order issued by the common pleas court confirming, modifying, vacating or enforcing the award." *Id.* at ¶ 21, citing *Fraternal Order of Police v. City of Athens,* 4th Dist. No. 01 CA18, 2001-Ohio-2621, 2001 WL

1479227 at *3. "An appellate court will review the common pleas court's decision to confirm, modify, vacate or enforce the arbitration award based on abuse of discretion." *Buchholz*, 2008-Ohio-5299 at ¶ 22, citing *Marshall v. Colonial Insurance Co. of Cal.,* 11th Dist. No.2007-T-0013, 2007-Ohio-6248, ¶ 14. An abuse of discretion is no mere error of law or judgment, but instead, requires a finding that the trial court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). "This court may not review original arbitration proceedings, but instead, must provide the original arbitration proceedings a strong presumption of validity." *Buchholz* at ¶ 21.

{¶ 21} Trenton raises two issues with respect to the common pleas court's decision to modify the arbitration award. First, the city argues that the common pleas court erred by not applying the proper standard of review and cursorily determining that the arbitrator's award exceeded its authority under R.C. 2711.10(D). Second, the city argues that, even if the common pleas court's decision utilized the proper standard of review, the decision must still be overturned as the common pleas court erred in ignoring the mutual request of the parties to grant the arbitrator the "broadest authority possible" under the Collective Bargaining Agreement. The Association counters that the common pleas court did not err in finding that the arbitrator exceeded her authority because the arbitrator improperly crafted two remedies: first, by determining Matala's insubordinate conduct should be disciplined with a 30-day unpaid suspension and second, finding that, based upon her subjective opinions regarding the relationship of the police officers in this case, Matala should resign.

{¶ 22} "In order to determine whether an arbitrator has exceeded his or her authority under R.C. 2711.10(D), the trial court must first determine whether the award draws its essence from the collective-bargaining agreement." *Cincinnati v. Queen City Lodge No. 69,* 2005-Ohio-6225 at ¶ 17. "Once it is determined that the arbitrator's award draws its essence from the collective bargaining agreement and is not unlawful, arbitrary or capricious, a

reviewing court's inquiry for purposes of vacating an arbitrator's award pursuant to R.C. 2711.10(D) is at an end." *Id.*, citing *Findlay School,* 49 Ohio St.3d at paragraph two of the syllabus.

{¶ 23} "An arbitrator's award draws its essence from the collective-bargaining agreement when there is a rational nexus between the agreement and the award." *Id.* at ¶ 18, citing *Internatl. Assn. of Firefighters v. Columbus*, 95 Ohio St.3d 101, 102 (2002). An arbitrator's award departs from the essence of a collective bargaining agreement when: (1) the award conflicts with the express terms of the agreement and/or (2) the award is without rational support or cannot be rationally derived from the terms of the agreement. *Ohio Office of Collective Bargaining v. Ohio Civ. Serv. Emp. Assn., Local 11, AFSCME, AFL–CIO*, 59 Ohio St.3d 177, 179 (1991).

{¶ 24} In this case, the parties do not dispute that the arbitrator had the authority from the Collective Bargaining Agreement to determine that Matala's conduct was in violation of the Police Department's Code of Conduct and that just cause existed to discipline Matala. Rather, the issue raised by the parties is whether the arbitrator's form of discipline drew its essence from the Collective Bargaining Agreement.

{¶ 25} "After finding a violation of a collective bargaining agreement, an arbitrator is presumed to possess implicit remedial power, unless the agreement contains restrictive language withdrawing a particular remedy from the jurisdiction of the arbitrator." *Queen City Lodge No. 69, Fraternal Order of Police, Hamilton Cty., Ohio, Inc.,* 63 Ohio St.3d 403 (1992), paragraph one of the syllabus. "Absent language in a collective-bargaining agreement that restricts the arbitrator's power to review, if the arbitrator determines that there was just cause to discipline an employee, the arbitrator is not required to defer to the employer as to the type of discipline imposed." *Bd. of Trustees of Miami Twp.*, 81 Ohio St.3d at 271-272. "An arbitrator has broad authority to fashion a remedy, even if the remedy contemplated is not

- 8 -

explicitly mentioned in the labor agreement." *Bd. of Trustees of Miami Twp.,* 81 Ohio St.3d at 273; *Queen City Lodge No. 69*, 63 Ohio St.3d at 406. "Once the arbitrator has made an award, that award will not be easily overturned or modified. It is only when the arbitrator has overstepped the bounds of his or her authority that a reviewing court will vacate or modify an award." *Bd. of Trustees of Miami Twp.,* 81 Ohio St.3d at 273; R.C. 2771.10(D).

{¶ 26} The applicable Collective Bargaining Agreement in this case provides that "No bargaining unit member shall be disciplined by a reduction in pay or position, suspension, written reprimand, or dismissal except for just cause." The agreement goes on to provide the types of disciplinary action available:

> Forms of disciplinary action shall be written reprimands; suspension without pay or discharge. Discipline shall be applied progressively, but it is understood that some serious violations may warrant suspension without pay or immediate discharge. In following the principle of "the punishment should fit the crime," the [City of Trenton] will take into consideration the nature of the violation, the Employee's record of discipline and the Employee's record of performance and conduct.

"Discharge" is not defined by the Collective Bargaining Agreement but contains the ordinary meaning of "a release or dismissal esp. from an office or employment." Webster's Third New International Dictionary (1993) 644; *see Deerfield Twp. v. Mason,* 12th Dist. No. CA2011-12-138, 2013-Ohio-779, ¶ 16 ("Common, undefined words appearing in a contract 'will be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents' of the agreement"). In addition, the parties agree that an involuntary resignation is "equivalent" to being dismissed from employment. The term "dismiss" is also not defined in the Collective Bargaining Agreement but contains the ordinary meaning of "to send or remove from employment, enrollment, position, or office." Webster's Third New International Dictionary (1993) 652.

{¶ 27} Here, the arbitrator determined that there was no just cause to terminate Matala

- 9 -

but that his "insubordinate" conduct did warrant "some disciplinary penalty" for disobeying the order of a superior and "publicly criticizing his commanding officer to the public." The arbitrator further concluded that, because of Matala's conduct in relation to his commanding officers, distrust was created within the Police Department that could not be eradicated. In addition, the arbitrator explained the advantages and disadvantages of resignation rather than termination. While the arbitrator determined Matala's conduct warranted him leaving the police department, she did not want to obstruct his future employment in law enforcement. Thus, the arbitrator made *one* remedial determination, finding that Matala should serve a 30-day suspension without pay followed by resignation from employment while having the termination removed from his personnel file.

{¶ 28} Consequently, the question raised is whether the requirement that an employee involuntarily resign from employment constitutes a "discharge" such that it draws its essence from the Collective Bargaining Agreement.

{¶ 29} From our review of the record, we find that the arbitrator's decision does draw its essence from the Collective Bargaining Agreement. This result best provides for the Collective Bargaining Agreement's overall principle that the "punishment fit the crime." Based upon their ordinary meanings and their use in the Collective Bargaining Agreement, the terms "dismissal" and "discharge" include the removal of an employee from employment. Because the arbitrator found that Matala's conduct constituted insubordination, and the Collective Bargaining Agreement lists insubordination as an example of "just cause" warranting the discharge of an employee, the arbitrator's holding that Matala should resign is within the essence of the Collective Bargaining Agreement which permits the removal of an employee from employment. The remedy crafted by the arbitrator best "fit[s] the crime" committed by Matala and, consequently, stemmed from the essence of the Collective Bargaining Agreement. Therefore, the arbitrator did not exceed her powers pursuant to R.C.

2711.10(D). Furthermore, as the parties requested the arbitrator determine an appropriate remedy for Matala's conduct, we cannot say that the arbitrator awarded upon a matter not submitted to her pursuant to R.C. 2711.11(B).

{¶ 30} Based upon the foregoing, we find that the arbitrator's award draws its essence from the Collective Bargaining Agreement and is not arbitrary, capricious, or unlawful. As such, we find that the common pleas court abused its discretion in finding that the arbitrator's award exceeded the scope of her review pursuant to R.C. 2711.10(D).

{¶ 31} Accordingly, the city of Trenton's two assignments of error are sustained. The judgment of the common pleas court will be reversed and the December 28, 2011 award of the arbitrator is ordered reinstated.

{¶ 32} Judgment reversed.

PIPER, J., concurs.

S. POWELL, J., dissents.

**S. POWELL, J., dissenting.**

{¶ 27} I respectfully dissent from the opinion of the majority, as I do not believe that forcing an employee to resign stems from the essence of the Collective Bargaining Agreement. As such, I would find that the arbitrator exceeded the scope of her authority in this case and the common pleas court did not err in vacating and modifying the arbitrator's award.

{¶ 28} In her "Opinion and Award," the arbitrator found that there was just cause to discipline Matala for his conduct, but that "the penalty of termination [was] too severe." Yet, the arbitrator went on to determine that Matala should resign from employment with the city of Trenton after serving a 30-day unpaid suspension.

- 11 -

{¶ 29} As discussed by the majority, the Collective Bargaining Agreement provides that "[f]orms of disciplinary action shall be written reprimands; suspension without pay or discharge." The Collective Bargaining Agreement does not provide that this list is non-exhaustive or that additional types of disciplinary action may be used. Rather, the agreement specifies that (1) written reprimands, (2) suspensions without pay, or (3) discharge are the only authorized forms of disciplinary action available. Thus, I believe the arbitrator was restricted to disciplinary actions listed above rather than creating her own discipline through the "essence" of the agreement. *See Queen City Lodge No. 69, Fraternal Order of Police, Hamilton Cty., Ohio, Inc.,* 63 Ohio St.3d 403 (1992), paragraph one of the syllabus (an "arbitrator is presumed to possess implicit remedial power, unless the agreement contains restrictive language withdrawing a particular remedy from the jurisdiction of the arbitrator"). As this list does not provide the arbitrator the authority to forcibly cause an employee to resign, I believe the arbitrator exceeded her authority pursuant to R.C. 2711.10(D).

{¶ 30} Furthermore, to terminate an employee is "to discontinue the employment of" said employee. Webster's Third New International Dictionary (1993) 2359. In other words, termination carries the same definition as to dismiss or discharge an employee. As acknowledged by the majority, these words all convey the meaning of removing an individual from employment. As such, I do not believe an arbitrator can rule that "termination" of an employee is "without just cause" while simultaneously finding that involuntary resignation of that employee is supported by just cause. If Matala's conduct of insubordination did not, as the arbitrator found, create just cause for his termination, I cannot agree that this same conduct creates just cause for involuntary resignation.

{¶ 31} Finally, I think it inappropriate to allow an arbitrator the authority to force an employee to resign from employment when an employer does not have this type of power.

{¶ 32} In light of the foregoing, I disagree with the majority's finding that involuntary

resignation stems from the "essence" of the Collective Bargaining Agreement in this case. I would find that the common pleas court did not abuse its discretion by vacating and modifying the arbitrator's award to require reinstatement of Matala after a 30-day unpaid suspension. Therefore, I would affirm the decision of the common pleas court.